**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.:  25-CV-60391**

ASIA ELKHALIL,

    Plaintiff,

v.

EAST BEACH LLC, d/b/a
PIER 14 TAPAS AND COCKTAILS,

    Defendant.
_____/

**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Defendant EAST BEACH, LLC d/b/a PIER 14 TAPAS AND COCKTAILS hereby moves to dismiss the Complaint [ECF No. 1] for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and states as follows:

**INTRODUCTION AND GROUNDS FOR DISMISSAL**

Plaintiff is a former bartender for Defendant, a bustling restaurant and bar in Lauderdale by the Sea. (Compl. ¶ 5). As the Complaint acknowledges, Defendant acquired the business back in January 2024, prior to which Plaintiff worked for years as the "lone bartender during her shifts." (Compl. ¶¶ 24-25). As Plaintiff points out, "she was unhappy with the current schedule because she was previously scheduled for busier shifts" under prior ownership. (Compl. ¶ 50). The theme of the Complaint is that Plaintiff grew accustomed to working as the sole bartender under prior ownership, enjoyed prior policies of retaining all customer tips for herself, and was now unable to do so under new ownership. The Complaint primarily gripes about Plaintiff's clashes with her supervisor and discontent with new ownership.  However, such allegations do not give rise to

1

intentional discrimination. As one court in this district has observed, "a court must remember that Title VII is not 'a general civility code' but is directed at discrimination based on protected characteristics." *Pla v. Diocese of Palm Beach*, No. 23-CV-81302, 2024 WL 402563, at *2 (S.D. Fla. Feb. 2, 2024), citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 75 (1998). As explained in further detail below, the Complaint fails to allege plausible facts giving rise to a claim for discrimination.

As for the accommodations Plaintiff alleges she requested, and was denied, the Complaint fails to allege in any way she was not provided, or was denied, additional breaks or that she was required to overly exert herself. In fact, the Complaint completely omits an explanation as to what medical condition related to her pregnancy that warranted any such vague accommodations. To the contrary, laments about how she could no longer work alone on her shifts and lost income by not being able to remain the lone bartender as she did under previous ownership. *See* Compl. ¶ 24 ("For years, Ms. Elkhalil regularly worked as the lone bartender during her shifts and earned wages via tips . . . "). To the contrary, Plaintiff's allegations support the fact that she was able to work alone, and preferred to do so, in the same manner as if she were not pregnant. *See Kessler v. Zimmerman Advert., LLC*, No. 17-CV-61691-DPG, 2017 WL 5178351, at *2 (S.D. Fla. Nov. 8, 2017) (dismissing pregnancy retaliation claims because "Plaintiff's statements are more analogous to a reassurance that she can still perform her duties while pregnant").

The Complaint otherwise fails to allege plausible facts giving rise to intentional discrimination based on sex or pregnancy, or a failure to accommodate a known medical condition or limitation to pregnancy. For the reasons outlined below, the Complaint should be dismissed.

**MEMORANDUM OF LAW**

**I.     Title VII and FCRA Discrimination (Counts I and VI)**

As a preliminary matter, "[t]he analysis for a pregnancy discrimination claim is the same as for a Title VII sex discrimination claim . . .[t]he Title VII analysis also applies to FCRA claims. *Id*. Courts have generally held that a Plaintiff seeking to bring a claim for discrimination may do so "either directly or circumstantially**,** for example by showing that the plaintiff was treated differently than similarly situated . . . employees." *Stears v. Apple Inc*., No. 0:24-CV-61260, 2024 WL 5264816, at *2 (S.D. Fla. Dec. 3, 2024), citing *Chandler v. Sheriff, Walton Cnty*., No. 22-13698, 2023 WL 7297918, at *4 (11th Cir. Nov. 6, 2023) ("The plaintiff may show that the employer treated similarly situated individuals outside his protected class more favorably."); *Penaloza v. Target Corp*., 549 Fed. Appx. 844, 846 (11th Cir. 2013) ("A plaintiff may prove discrimination through circumstantial evidence using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."). To Complaint fails to allege direct or circumstantial evidence of discrimination under Title VII, and in turn, the FCRA.

   **a.  Failure to Allege Direct Evidence of Discrimination**

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of the fact at issue without inference or presumption . . . only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Barrett v. Capital Acquisitions & Mgmt. Co*., No. 03-62091CIV, 2005 WL 5435098, at *4 (S.D. Fla. Jan. 26, 2005) (citations omitted).

The Complaint fails to allege remarks so blatantly discriminatory that it was clear Plaintiff was being subjected to adverse action because of her pregnancy. *See, e.g., Picado v. M&S Cargo Express Corp*., No. 24-21982-CV, 2024 WL 4225491, at *3 (S.D. Fla. Sept. 18, 2024) (denying

3

motion to dismiss discrimination claim when complaint alleged plaintiff's supervisor told him "[y]ou are too old ... I cannot trust your skills ... I cannot have old people working here."); *Stephens v. Adler Soc.*, LLC, No. 20-62242-CIV, 2021 WL 5084236, at *1 (S.D. Fla. Mar. 12, 2021) (denying motion to dismiss when complaint alleged "supervisor also advised [plaintiff] to remove a Christmas stocking from her desk that said "Baby" because the owners would not like it. and "[plaintiff's] work could not be performed from home and insisted that she return to the office, in defiance of her obstetrician's orders.).

Unlike *Picado* and *Stephens*, the Complaint in this case is significantly more vague and lacking in plausibility. Plaintiff alleges, without any supporting facts, that she was "belittled" and "mocked due to her pregnancy" (Compl. ¶ 93) without a single specific statement made by Mr. Camargo which infers an intent to discriminate against Plaintiff due to her pregnancy, a timeline of these statements, in what context they were made, how she was belittled and/or mocked, etc. Over and over, the Complaint recycles the same conclusory and vague statements such as Defendant "creat[ed] and foster[ed] an abusive and hostile work environment by berating Ms. Elkhalil on a regular basis, subjecting her to degrading treatment that interfered with her ability to perform her job," providing no detail whatsoever as to how this transpired, who and when and "abusive" or "degrading" statements or conduct took place, or any facts which give rise to a plausible claim for discrimination under any theory alleged in the Complaint (*see, e.g.*, Compl. ¶¶ 139 150 162, 174).  Such vague allegations cannot survive dismissal.

This case is more akin to *Mensah v. Mnuchin*, No. 20-22876-CIV, 2020 WL 6701926, at *14 (S.D. Fla. Nov. 13, 2020). In *Mensah*, the Court granted a motion to dismiss a discrimination claim because "Plaintiff alleges Jimenez constantly mocked him by making offensive jokes and negative references . . . but there are no factual allegations establishing what was said or when and

4

how often this conduct occurred."); *see also Barrett*, 2005 WL 5435098 at *5 (refusing to consider direct evidence of discrimination in the form a statement that the plaintiff was discharged "due to her pregnancy.").

Additionally, "there must be a direct correlation between the adverse employment action and the discriminatory comment for statements to constitute direct evidence of discrimination." *Id*. In her discrimination counts, Plaintiff alleges in a broad, vague fashion that "[t]he discriminatory actions of the Defendant against Ms. Elkhalil, as described and set forth above, constitute an adverse employment action for the purposes of Title VII. In subjecting Ms. Elkhalil to adverse employment actions, the Defendant intentionally discriminated against Ms. Elkhalil with respect to the compensation, terms, conditions, or privileges of her employment." (Compl. ¶ 83). Plaintiff leaves the Court and the Defendant to sift through all of her allegations to determine which "adverse employment action" she refers, but instead references all prior allegations, and fails to draw a direct correlation between any statements made by Defendant with an adverse employment action. The Complaint fails to draw any direct correlation between her vague allegations of being "mocked" and "belittled" and any adverse employment action. Plaintiff fails to allege sufficient direct evidence of discrimination.

### b. Failure to Allege Circumstantial Evidence of Discrimination

Plaintiff also fails to allege circumstantial evidence of discrimination. Under the *McDonnell Douglas* framework, "[t]o state a claim for discrimination based on sex and pregnancy in violation of the Florida Civil Rights Act ("FCRA") and Title VII, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), a plaintiff must allege that (1) she was pregnant (a member of a protected class) and her employer knew that she was pregnant; (2) she was performing her duties satisfactorily; (3) she was subject to adverse employment action; and (4) similarly situated

employees not in the protected class were treated more favorably." *Louis v. HMSHost Corp.*, No. 20-CV-61727-RAR, 2020 WL 13389301, at *1 (S.D. Fla. Dec. 14, 2020).

At the very least, "[t]he dispute here turns on the fourth element: whether [Defendant] treated similarly situated, non-pregnant employees more favorably." *Penaloza* at 847. Plaintiff alleges in conclusory fashion that "[n]o similarly situated male employees endured the discriminatory conduct that Ms. Elkhalil was forced to endure." Compl. ¶ 82 [ECF No. 1]. The Complaint fails to point to a single male employee which holds the same position as Plaintiff and how any male employee was treated in a different way than Plaintiff. Courts routinely dismiss discrimination cases based on such vague assertions. *See, e.g., Mitchell v. City of Miami Beach,* No. 21-22835-CIV, 2022 WL 1746919, at *5 (S.D. Fla. May 31, 2022) (dismissing discrimination claim and holding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [Plaintiff] does not plead a single fact showing that his putative comparators are similarly situated."), *aff'd*, No. 22-12139, 2024 WL 140065 (11th Cir. Jan. 12, 2024*); Louis v. HMSHost Corp.*, No. 20-CV-61727-RAR, 2020 WL 13389301, at *1 (S.D. Fla. Dec. 14, 2020) (granting motion to dismiss when the Complaint alleged that Defendant treated "Plaintiff differently than similarly situated employees in the terms and conditions of her employment" and holding "Plaintiff's Complaint does not contain sufficient factual allegations regarding similarly situated employees or the way in which they were treated . . ."); *Stears,* 2024 WL 5264816, at *2 (granting motion to dismiss and holding there were insufficient facts giving rise to direct or circumstantial evidence of discrimination and holding "**Plaintiff's generic reference to non-disabled employees does not assist him in plausibly pleading the third element of his discrimination claim**.") (emphasis added), citing *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming dismissal of discrimination claim and

holding "[w]hen comparing her treatment to a non-protected employee ... **the plaintiff must show that she and the other employee were similarly situated in all relevant respects** . . . [Plaintiff] referenced younger males, but nowhere in her complaint does she identify any valid comparators to undergird her disparate treatment claims.") (emphasis added); *Brezenski v. St. Thomas Univ., Inc.*, No. 20-24860-Civ, 2021 WL 3473847, at *3 (S.D. Fla. Aug. 6, 2021) ("The Plaintiff does not identify any comparators without a disability and who were promoted, who also had similar experience, applied for similar positions, and conducted similar research."); *Henderson v. Dade Cty. Police Benevolent Ass'n, Inc.*, No. 14-20321-Civ, 2014 WL 3591600, at *7 (S.D. Fla. July 18, 2014) (holding the plaintiff's allegations that comparators were similarly situated were insufficient because the plaintiff had not alleged that the alleged comparators were equally or less qualified than the plaintiff); *Hyppolite-Marriott v. Florida Dep't of Veterans Affairs*, No. 0:21-CV-60352-RS, 2021 WL 5529871, at *6 (S.D. Fla. Nov. 2, 2021) (Smith, J.)[1], citing *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 298 (2015); *Jones v. Unity Behavioral Health, LLC*, No. 20-14265, 2021 WL 5495578, at *2 (11th Cir. Nov. 23, 2021) (affirming dismissal of discrimination claims and holding "[n]othing in the amended complaint indicates that [Plaintiff's] alleged underpayment was connected to her race or national origin . . . she doesn't identify a comparator outside her protected classes who performed similar responsibilities but was paid more than she was.")[2].

---

[1] In *Hyppolite*, this Court dismissed a PDA and FCRA pregnancy discrimination claim, holding held that the Complaint failed to allege "that non-pregnant employees with similar restrictions were accommodated . . . [w]hile Plaintiff does allege in her PDA claim that 'non-pregnant employees are accommodated as necessary' . . . she does not make the same allegation in her FCRA pregnancy discrimination claim. Moreover, such a vague, general allegation is not the same as alleging that non-pregnant employees in Plaintiff's position with similar standing and walking restrictions were accommodated." *Id*.

[2] In *Jones*, the Court affirmed dismissal even though the Complaint alleged that her supervisor "used disparaging and racist language when interacting with Black employees" because "[Plaintiff's] stated belief that her race or national origin motivated these decisions is conclusory and unsupported by the factual allegations in the amended complaint." *Id*. at *3.

Plaintiff goes on to allege that "[n]o similarly situated male employees endured the discriminatory conduct that Ms. Elkhalil was forced to endure." [Compl. ¶ 82]. It is unclear from the Complaint how Plaintiff links the treatment of male employees to that of a pregnant female, given her allegations are such that a male employee would not require. Nor does the Complaint contain allegation solely related to Plaintiff's sex – but rather, the Complaint exclusively revolves around the fact that Plaintiff was pregnant. Ironically, the Complaint notably admits that another female employee, Floria Gerardino ("Floria"), was working alongside (thus revealing that other female employees were required to work with other bartenders and did not work alone like Plaintiff desired). **Significantly**, **the Complaint does not allege, for instance, that any other employees were given sole bartending shifts where they could retain all tips for themselves**. The Complaint supports the notion that female employees were treated the same as Plaintiff.

In reality, the Complaint appears to revolve around one central, conclusory allegation: "Camargo had scheduled Florida, a non-pregnant female employed by Defendant, to bartend shifts alongside Ms. Elkhalil." (Compl. ¶ 33). Plaintiff does not allege that Floria replaced Plaintiff, but simply that Floria was added as a second bartender. Again – no indicia of discrimination whatsoever, but rather an obvious admission that Plaintiff was dissatisfied with the fact that Defendant added more employees to the bartending shifts. The remaining allegations reveal nothing more than employee who did not get along with her boss. *See, e,g*., Compl. ¶ 50 ("Ms. Elkhalil answered that she was unhappy with the current schedule because she was previously scheduled for busier shifts and knew that she would not be able to financially provide for herself with the new shifts."). Moreover, Plaintiff is not required to give preferential treatment to Defendant simply because she was pregnant. *See Abbott v. Elwood Staffing Services, Inc*., 44 F. Supp. 3d 1125, 1158 (N.D. Ala. 2014) ("The Pregnancy Discrimination Act does not require that

8

employers give preferential treatment to pregnant employees."). For this reason, as well, dismissal is warranted.

## II. Hostile Work Environment Claims (Counts II and VII)[3]

As with the previous counts, Plaintiff's federal and state law claims for hostile work environment are analyzed together as "the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, . . . the state-law claims do not need separate discussion and their outcome is the same as the federal ones." *Alvarez* at 1271. "To state a Title VII hostile work environment claim, an employee must prove that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Estate of Caviness v. Atlas Air, Inc.*, 693 F. Supp. 3d 1271, 1282 (S.D. Fla. 2023), quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Stated another way, "[a] hostile work environment claim depends on a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1349 (11th Cir. 2007).

Additionally, Plaintiff must allege a "work environment is both subjectively and objectively hostile." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1249 (11th Cir. 2014). "The objective level of harassment is a circumstantial determination considering the discriminatory conduct's frequency, severity, whether physically threatening or humiliating, offensiveness, and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "It is well-settled that the terms and conditions of employment are

---

[3] Although Plaintiff's alleges individual claims based on a hostile work environment, she also realleged a hostile work environment theory throughout the Complaint, in the same conclusory fashion, in support of most if not all of her claims. *See, e.g.*, Compl. ¶¶ 70, 81, 105, 174.

9

not altered by "teasing, offhand comments, and isolated incidents (unless extremely serious)." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

Paragraph 93 of Complaint incapsulates the vague and conclusory nature of Plaintiff's claim. In that paragraph, Plaintiff alleges that she was "repeatedly belittled and mocked due to her pregnancy" – providing no example, instance, or occasion in which such conduct occurred, how she was belittled or mocked (such as specific statements made by a supervisor).  Instead, Plaintiff alleges "physical threats" were made, making no reference whatsoever to what type of physical threat, what "Mr. Camargo" actually said to Plaintiff that constituted such a physical threat,  or even an approximate date that this incident occurred.  Plaintiff cannot genuinely allege her discontent with not being able to work more hours, and do so alone, and also allege that that she worked in such a pervasively hostile environment that it interfered with her work performance.

Plaintiff should not be permitted to make such serious allegations in a conclusory fashion without factual support. Courts have found that similar conclusory allegations, such as that the Plaintiff "feared the safety of her unborn child . . .", are insufficient as it "fails to allege any supporting facts, such as to whom, when, and how she purportedly objected." *Louis*, 2020 WL 13389301 at *2.  The Complaint is replete with accusations of "demeaning and abusive conduct" without factual support for same. If Plaintiff felt Defendant's conduct was so severe and pervasive, it can only be presumed that she has the ability to allege sufficient facts outlining such conduct. For these reasons, dismissal is warranted.

### III. <u>Failure to State a Claim Under the PWFA (Counts V and IV)</u>

Plaintiff alleges two separate counts under the Pregnant Workers Fairness Act (PWFA). The PWFA went into effect on June 27, 2023, and generally requires an employer to make reasonable accommodations to **the <u>known limitations related to pregnancy</u>** unless such accommodation would impose an undue hardship on the operation of the business. 42 U.S. Code § 2000gg-1. The PWFA defines a "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions that the employee or employee's representative has **communicated** to the employer whether or not such condition meets the definition of disability specified in section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102)." *See also* 29 CFR 1636.3(b) (listing examples of "medical conditions" that would constitute a limitation under the PWFA).

The Complaint is devoid of any allegations that Plaintiff had a limitation related to her pregnancy, let alone that such limitations were known by or communicated to Defendant. The Complaint instead alleges in a conclusory fashion that "Ms. Elkhalil explained that her pregnancy related accommodations included additional breaks and limiting excessive physical exertion," failing to allege a "physical or mental condition related to, affected by, or arising out of pregnancy" as the plain text of the PWFA requires. *See* 42 U.S. Code § 2000gg-1; 42 USC § 2000gg(4). Yet, Plaintiff fails to allege any complication, medical condition, or any other condition giving rise to a "limitation" within the context of PWFA. This warrants dismissal. *See Beddingfield v. United Parcel Serv., Inc.*, No. 23-CV-05896-EMC, 2024 WL 1521238 (N.D. Cal. Apr. 8, 2024) (dismissing PWFA claim for failing to allege related medical condition or limitation); Johnson v. Wag Hotels, Inc., No. 3:24-CV-3268-BN, 2025 WL 992573, at *5 (N.D. Tex. Apr. 2, 2025)

(dismissing PWFA claim and holding plaintiff "offers no facts from which the Court may be infer that she requested an accommodation from [Defendant] based on the effects of pregnancy.")

Plaintiff also alleges the Defendant "failed to engage in the interactive process required under the PWFA by refusing to acknowledge or discuss Ms. Elkhalil's request for pregnancy-related accommodations." (Compl. ¶ 128). However, there could have been no interactive process if Plaintiff did not communicate a *known limitation* to Defendant. *See Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *3 (E.D. Wis. Dec. 16, 2024) (dismissing PWFA claim and holding "the interactive process should identify the known limitation under the PWFA and the adjustment or change at work that is needed due to the limitation, if either of these is not clear from the request, and potential reasonable accommodations."), citing 29 C.F.R. § 1636.3(k). As the Court in *Keiper* also reiterated, "[e]mployers only face liability under the PWFA for failure to accommodate their employee's known limitations. *Id*.

Plaintiff fails to plead both a medical condition/limitation as well as that she communicated these conditions or limitations to Defendant. Nor should these facts be taken as true given her contradictory allegations that she wanted to work longer and harder (by working alone). For these reasons, the PWFA claims should be dismissed.

**IV.     Failure to State a Claim for Title VII and FCRA Retaliation (Counts III and VIII)**

"In order to establish a prima facie case for retaliation, an employee must establish that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal relation between the protected activity and the adverse action." *Penaloza*, 549 Fed. Appx. at 847; *see also Little v. CSRA, Inc.*, 834 Fed. Appx. 495, 499 (11th Cir. 2020) (same). As with the discrimination claims, the analysis is the same for retaliation claims under Title VII and the FCRA. *See Alvarez*, 610 F.3d at 1271.

### a. Failure to Allege a Statutorily Protected Activity

Plaintiff attempts to allege various protected activities to support the first element of a retaliation claim under Title VII and FCRA. *See* Compl. ¶¶ 105, 174. Plaintiff first alleges in a conclusory and vague fashion that she "explained that her pregnancy related accommodations included additional breaks and limiting excessive physical exertion, but Camargo did not respond (Compl. ¶ 31). This allegation is problematic for several reasons. First, this appears to be flatly contradicted by Plaintiff's allegation that Mr. Camargo said "ok" to her request for "pregnancy-related accommodations moving forward." (Compl. ¶ 30). Next, Plaintiff would have this Court take as true the fact that she "requested reasonable accommodations from Defendant on account of her pregnancy," (Compl. ¶ 137), which vaguely includes "additional breaks" and "limiting excessive physical exertion" (Compl. ¶ 31), but also that she was dissatisfied with the fact that "[f]or years, [she] regularly worked as the lone bartender during her shifts and earned wages via tips . . . Ms. Elkhalil and that she "rarely worked alongside another bartender during her shift" Compl. ¶ 24). but now, was unhappy that, "[Mr.] Camargo cut Ms. Elkhalil's wages in half by placing Floria to work alongside her." (Compl. ¶ 35). Nor does the Complaint explain what type of limits to "excessive physical exertion" she was requesting in her role as bartender, or that she was unable to take additional breaks if she desired.

Effectively, the Complaint admits that Plaintiff could still perform her duties while pregnant, and in the same manner as if she were not pregnant, given she was clearly upset that she could not remain the "lone" bartender hauling in all the tips for herself (and now had to share them with Floria). Courts have dismissed retaliation claims under these circumstances. *See Kessler*, 2017 WL 5178351, at *2 (dismissing retaliation claims because "Plaintiff's statements are more analogous to a reassurance that she can still perform her duties while pregnant"); *see also Abbott*,

13

44 F. Supp. 3d 1125, 1158 ("Under the Pregnancy Discrimination Act, the plaintiff was not entitled to a modified duty assignment solely because she was pregnant." "[A]n employer violates the [Pregnancy Discrimination Act] when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions."), citing *McQueen v. AirTran Airways, Inc*., 3:04–CV–00180–RS–EMT, 2005 WL 3591100 at *5 (N.D.Fla. Dec. 30, 2005).

Additionally, as previously explained Plaintiff's vague allegation that Defendant "foster[ed] an abusive and hostile work environment by berating Ms. Elkhalil on a regular basis, subjecting her to degrading treatment that interfered with her ability to perform her job," providing no detail whatsoever as to how this transpired, who and when and "abusive" or "degrading" statements or conduct took place, or any facts that would establish a statutorily protected act. (Compl. ¶¶ 105).The Complaint fails to allege a statutorily protected warranting dismissal of the retaliation claims.

      b. **Failure to Allege a Causal Link Between a Protected Activity and the Adverse Action**

The sole basis upon which Plaintiff alleges a materially adverse action in support of her retaliation claim is that Defendant terminated Plaintiff's employment on or around April 21, 2024. Compl. ¶¶ 66, 108. The Complaint fails to draw a causal link between being terminated and a statutorily protected activity. Plaintiff alleges that she was terminated "because of her protected activities, including her report of unlawful discrimination on the same day Defendant unlawfully terminated her employment." The Eleventh Circuit recognized in *Penaloza,* 549 Fed. Appx. at 847, that "[a]s to the last element, temporal proximity by itself can be enough to show causation; the events, however, must be very close . . . [w]e have held, for example, that three months is not close enough, where there is no other evidence of a causal link." *Id*. Plaintiff fails to give the Court sufficient facts to even undertake this analysis as there is no timeline of the alleged retaliatory acts

14

alleged at all. Instead, Plaintiff alleges slew of vague, unspecific acts that she reiterates throughout the Complaint, none of which refer to a specific instance in time. *See, e.g.* Compl. ¶¶ 105, 139, 174 [ECF No. 1]. For this reason, as well, dismissal is warranted.

## CONCLUSION

For the reasons detailed above, the Complaint fails to state a claim upon which relief can be granted. Plaintiff has not provided sufficient factual allegations to support claims of discrimination, hostile work environment, or retaliation under Title VII, the Florida Civil Rights Act (FCRA), or the Pregnant Workers Fairness Act (PWFA). The allegations are vague, conclusory, and lack the necessary specificity to establish direct or circumstantial evidence of discrimination or retaliation. Furthermore, the Plaintiff has not demonstrated that she communicated any known limitations related to her pregnancy that would necessitate accommodations under the PWFA. Accordingly, the Complaint should be dismissed.

Respectfully submitted,

**BLACK LAW P.A.**
*Counsel for Defendant*
1401 E. Broward Blvd., Suite 204
Fort Lauderdale, Florida, 33301
ph. 954-320-6220/f. 954-320-6005

/s/ *Cody Shilling*
_____
**KELSEY K. BLACK, ESQ.**
Fla. Bar No. 78925
kb@blacklawpa.com
**CODY J. SHILLING, ESQ.**
Fla. Bar No. 1010112
cs@blacklawpa.com