UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:  25-CV-60391

ASIA ELKHALIL,

    Plaintiff,

v.

EAST BEACH LLC, d/b/a
PIER 14 TAPAS AND COCKTAILS,

    Defendant.
_____/

**MOTION TO DISMISS AMENDED COMPLAINT
AND INCORPORATED MEMORANDUM OF LAW**

Defendant EAST BEACH, LLC d/b/a PIER 14 TAPAS AND COCKTAILS hereby moves to dismiss the Amended Complaint [ECF No. 22] for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and states as follows:

**INTRODUCTION AND GROUNDS FOR DISMISSAL**

Plaintiff is a former bartender for Defendant, a bustling restaurant and bar in Lauderdale by the Sea. (Am. Compl. ¶¶ 1, 22, 25). As the Complaint acknowledges, Defendant acquired the business back in January 2024, prior to which Plaintiff worked for years as the "lone bartender during her shifts" (Am. Compl. ¶ 24) and "was unhappy with the current schedule because she was previously scheduled for busier shifts and knew that she would not be able to financially provide for herself with the new shifts." (Am. Comp. ¶ 59). Interestingly, Plaintiff also alleges that Defendant was only acquired in 2024, and so it is unclear why Plaintiff alleges she has been a "dedicated employee of Defendant for more than six (6) years." (Am. Compl. ¶ 1). This is only one of many inconsistencies throughout the Amended Complaint. In any event, the Amended

1

Complaint is abundantly clear – Plaintiff is bitter because she could no longer unilaterally dictate shift scheduling and keep all the tips for herself, as she admits she grew accustomed to under prior ownership.

Plaintiff goes on to allege that "Defendant scheduled many male and female bartenders to work shifts by themselves" (Am. Compl. ¶¶ 30, 80), only to contradict herself by alleging that another employee was scheduled to work alongside her (i.e. Floria, another female employee was scheduled to work alongside another). (Am. Compl. ¶ 39). Further demonstrating that the pleading is vague, Plaintiff now alleges "Ms. Elkhalil had further never seen another male or non-pregnant bartender be placed to work alongside another bartender." Plaintiff misunderstands her burden. It is Plaintiff who must allege plausible facts that discriminatory practices occurred, rather than alleging the mere the absence of such scenarios. In other words, the Amended Complaint alleges simply because Plaintiff never saw a lone bartender working, intentional discrimination must have occurred (the Amended Complaint also fails to address how Plaintiff would have known how many people, and who, were bartending when she was not at the restaurant). Plaintiff again fails to allege any causal link between shift assignments and intentional discrimination based on sex or pregnancy – another failure to cure the original pleading. Plaintiff's allegations fail to even scratch the surface of plausibility.

The Amended Complaint again spends many pages griping about Plaintiff's clashes with her supervisor and discontent with new ownership. This time around, Plaintiff seeks to paint a more graphic picture with the addition of profanities that Plaintiff somehow believes clears up the lack of plausible facts in the initial Complaint. (*see, e.g.,* Am. Compl. ¶¶ 64, 95, 107, 119, 140, 166, 178, 190). However, as one court in this district has observed, "a court must remember that Title VII is not 'a general civility code' but is directed at discrimination based on protected

characteristics." *Pla v. Diocese of Palm Beach*, No. 23-CV-81302, 2024 WL 402563, at *2 (S.D. Fla. Feb. 2, 2024), citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 75 (1998).

As for the accommodations Plaintiff allege that she requested, and was denied, the Amended Complaint fails to allege in any way she was not provided, or was denied, additional breaks or that she was required to overly exert herself. In fact, the Complaint completely omits an explanation as to what medical condition related to her pregnancy that warranted any such vague accommodations. To the contrary, laments about how she could no longer work alone on her shifts and lost income by being unable to remain the lone bartender as she did under previous ownership. *See* Am. Compl. ¶ 24 ("For years, Ms. Elkhalil regularly worked as the lone bartender during her shifts and earned wages via tips . . . "). To the contrary, Plaintiff's allegations support the fact that she was able to work alone, and preferred to do so, in the same manner as if she were not pregnant. *See Kessler v. Zimmerman Advert., LLC*, No. 17-CV-61691-DPG, 2017 WL 5178351, at *2 (S.D. Fla. Nov. 8, 2017) (dismissing pregnancy retaliation claims because "Plaintiff's statements are more analogous to a reassurance that she can still perform her duties while pregnant").

On the eve of her deadline to file a response to Defendant's Motion to Dismiss the Complaint [ECF No. 21], Plaintiff filed an Amended Complaint [ECF No. 22] in an effort to cure the issues raised in Defendant's motion. The Complaint fails to do so and otherwise contains *de minimis* changes to the prior pleading. Plaintiff makes clear that this action is brought due to her inability to unilaterally dictate shift scheduling as she got used to with her prior employer. As explained herein, the pleading still fails to state a claim for intentional discrimination or otherwise. Given two attempts have been made to plead this case – dismissal with prejudice is warranted.

**MEMORANDUM OF LAW**

**I.     Title VII and FCRA Discrimination (Counts I and VI)**

As a preliminary matter, "[t]he analysis for a pregnancy discrimination claim is the same as for a Title VII sex discrimination claim . . .[t]he Title VII analysis also applies to FCRA claims. *Id*.; *see also King v. Ferguson Enterprises, Inc*., 568 Fed. Appx. 686, 688 (11th Cir. 2014) ("We use the same analysis for claims of discrimination based on pregnancy as for claims of discrimination based on gender.") Courts have generally held that a Plaintiff seeking to bring a claim for discrimination may do so "either directly or circumstantially**,** for example by showing that the plaintiff was treated differently than similarly situated . . . employees." *Stears v. Apple Inc*., No. 0:24-CV-61260, 2024 WL 5264816, at *2 (S.D. Fla. Dec. 3, 2024), citing *Chandler v. Sheriff, Walton Cnty*., No. 22-13698, 2023 WL 7297918, at *4 (11th Cir. Nov. 6, 2023) ("The plaintiff may show that the employer treated similarly situated individuals outside his protected class more favorably."); *Penaloza v. Target Corp*., 549 Fed. Appx. 844, 846 (11th Cir. 2013) ("A plaintiff may prove discrimination through circumstantial evidence using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."). To Complaint fails to allege direct or circumstantial evidence of discrimination under Title VII, and in turn, the FCRA.

  **a.  Failure to Allege Direct Evidence of Discrimination**

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of the fact at issue without inference or presumption . . . only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Barrett v. Capital Acquisitions & Mgmt. Co*., No. 03-62091CIV, 2005 WL 5435098, at *4 (S.D. Fla. Jan. 26, 2005) (citations omitted).

The Amended Complaint again fails to allege remarks so blatantly discriminatory that it was clear Plaintiff was being subjected to adverse action because of her pregnancy. *See, e.g., Picado v. M&S Cargo Express Corp.*, No. 24-21982-CV, 2024 WL 4225491, at *3 (S.D. Fla. Sept. 18, 2024) (denying motion to dismiss discrimination claim when complaint alleged plaintiff's supervisor told him "[y]ou are too old ... I cannot trust your skills ... I cannot have old people working here."); *Stephens v. Adler Soc.*, LLC, No. 20-62242-CIV, 2021 WL 5084236, at *1 (S.D. Fla. Mar. 12, 2021) (denying motion to dismiss when complaint alleged "supervisor also advised [plaintiff] to remove a Christmas stocking from her desk that said "Baby" because the owners would not like it. and "[plaintiff's] work could not be performed from home and insisted that she return to the office, in defiance of her obstetrician's orders.). The Court should not find persuasive Plaintiff's addition of profanities to the amended pleading in an effort to bolster her argument.

Unlike *Picado* and *Stephens*, the current allegations are significantly more vague. Plaintiff alleges, without any supporting facts, that she was "belittled" and "mocked due to her pregnancy" (Am. Compl. ¶¶ 107, 178) without a single, specific statement made by Mr. Camargo which plausibly infers an intent to discriminate against Plaintiff due to her pregnancy, a timeline of these statements, in what context they were made, how she was belittled and/or mocked, etc. The Amended Complaint recycles the same conclusory and vague statements, such as Defendant "creat[ed] and foster[ed] an abusive and hostile work environment by berating Ms. Elkhalil on a regular basis, subjecting her to degrading treatment that interfered with her ability to perform her job," providing no detail whatsoever as to how this transpired, and when such "abusive" or "degrading" statements or conduct took place.*, See* Am. Compl. ¶¶ 119, 140, 166, 190.). Such vague allegations cannot survive dismissal.

This case is more akin to *Mensah v. Mnuchin*, No. 20-22876-CIV, 2020 WL 6701926, at *14 (S.D. Fla. Nov. 13, 2020). In *Mensah*, the Court granted a motion to dismiss a discrimination claim because "Plaintiff alleges Jimenez constantly mocked him by making offensive jokes and negative references . . . but there are no factual allegations establishing what was said or when and how often this conduct occurred."). As in *Mensah*, Plaintiff fails to provide any context as to the systematic and/or pervasive conduct by Mr. Camargo as she alleges. Further, in *Mensah*, the Court relied on several Eleventh Circuit cases in dismissing race discrimination and hostile work environment claims. *See Fortson v. Carlson*, 618 Fed. Appx. 601 (11th Cir. 2015) (concluding there was no racially hostile environment where the plaintiff cited nine incidents of coworkers calling Plaintiff racial epithets during two-and-a-half years of employment, with the harassing statements apparently stemming from coworkers' dissatisfaction with the plaintiff's job performance); *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1254 (11th Cir. 2014) (finding that conduct was not sufficiently severe or pervasive where the African-American plaintiff "saw his coworkers wear the Confederate flag on a regular basis," "saw racist graffiti in the men's restroom that he used on a daily basis[,]" "heard people say the slur 'n[*****]' ... a 'few times' over two years," "heard about [a] noose in the breakroom, [ ]though he did not see it himself." (alterations added); *Barrow v. Ga. Pac. Corp.*, 144 F. App'x 54, 57–58 (11th Cir. 2005) (concluding the display of the rebel flag on tool boxes and hard hats, the letters "KKK" appearing on bathroom wall and block-saw console, the use of the "n" word three times in one year, a noose in another employee's locker, and other isolated racial slurs were not severe or pervasive as to alter conditions of employment. *See also Barrett*, 2005 WL 5435098 at *5 (refusing to consider direct evidence of discrimination in the form a statement that the plaintiff was discharged "due to her pregnancy" and holding "these statements suggest, but do not prove, a discriminatory motive."); *see also Mejdoub*

*v. Desjardins Bank, N.A.*, No. 14-CIV-62722, 2016 WL 4369968, at *5-8 (S.D. Fla. Jan. 11, 2016) (holding that an employer's comment that the plaintiff "should focus on her work and stop trying to get pregnant" and "she should be ashamed of her faith" and "all Muslims are terrorists" and that "all they do is bomb places and kill people for a stupid religion." did not give rise to discrimination), citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). The Court should find these cases persuasive and dismiss the Amended Complaint. Ultimately, the Amended Complaint reveals nothing more than disdain for Mr. Camargo and his alleged lack of civility.

Additionally, "there must be a direct correlation between the adverse employment action and the discriminatory comment for statements to constitute direct evidence of discrimination." *Id.* Plaintiff alleges in a broad, vague fashion that "[t]he discriminatory actions of the Defendant against Ms. Elkhalil, as described and set forth above, constitute an adverse employment action for the purposes of Title VII. In subjecting Ms. Elkhalil to adverse employment actions, the Defendant intentionally discriminated against Ms. Elkhalil with respect to the compensation, terms, conditions, or privileges of her employment." (Am. Compl. ¶¶ 97, 143, 168). Plaintiff leaves the Court and the Defendant to sift through all her allegations to determine which "adverse employment action" she refers but references all prior allegations, and fails to allege a direct correlation between any statements made by Defendant, with an adverse employment action. The Amended Complaint fails to allege any direct correlation between her vague allegations of being "mocked" and "belittled" and any adverse employment action. Thus, Plaintiff again fails to allege sufficient direct evidence of discrimination.

### b. Failure to Allege Circumstantial Evidence of Discrimination

Plaintiff also fails to allege circumstantial evidence of discrimination. Under the *McDonnell Douglas* framework, "[t]o state a claim for discrimination based on sex and pregnancy

in violation of the Florida Civil Rights Act ("FCRA") and Title VII, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), a plaintiff must allege that (1) she was pregnant (a member of a protected class) and her employer knew that she was pregnant; (2) she was performing her duties satisfactorily; (3) she was subject to adverse employment action; and (4) similarly situated employees not in the protected class were treated more favorably." *Louis v. HMSHost Corp.*, No. 20-CV-61727-RAR, 2020 WL 13389301, at *1 (S.D. Fla. Dec. 14, 2020).

At the very least, "[t]he dispute here turns on the fourth element: whether [Defendant] treated similarly situated, non-pregnant employees more favorably." *Penaloza* at 847. Plaintiff alleges in conclusory fashion that "[n]o similarly situated male or non-pregnant female employees endured the discriminatory conduct that Ms. Elkhalil was forced to endure." (Am. Compl. ¶¶ 96, 108, 141, 167, 179). First, the Amended Complaint fails to allege how other employees were "similarly situated." Plaintiff fails to point to a single male or female employee which holds the same position as Plaintiff and how any male or female employee was treated in a different way than Plaintiff. In fact, the one-person Plaintiff does name was required to work alongside another bartender (the Plaintiff), therefore undercutting any allegation that "many" other bartenders were able to work alone. Courts routinely dismiss discrimination cases based on such vague assertions. *See, e.g., Mitchell v. City of Miami Beach,* No. 21-22835-CIV, 2022 WL 1746919, at *5 (S.D. Fla. May 31, 2022) (dismissing discrimination claim and holding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [Plaintiff] does not plead a single fact showing that his putative comparators are similarly situated."), *aff'd*, No. 22-12139, 2024 WL 140065 (11th Cir. Jan. 12, 2024*); Louis v. HMSHost Corp.*, No. 20-CV-61727-RAR, 2020 WL 13389301, at *1 (S.D. Fla. Dec. 14, 2020) (granting motion to dismiss when the Complaint alleged that Defendant treated "Plaintiff differently than similarly situated employees

in the terms and conditions of her employment" and holding "Plaintiff's Complaint does not contain sufficient factual allegations regarding similarly situated employees or the way in which they were treated . . ."); *Stears*, 2024 WL 5264816, at *2 (granting motion to dismiss and holding there were insufficient facts giving rise to direct or circumstantial evidence of discrimination and holding "**Plaintiff's generic reference to non-disabled employees does not assist him in plausibly pleading the third element of his discrimination claim**.") (emphasis added), citing *Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming dismissal of discrimination claim and holding "[w]hen comparing her treatment to a non-protected employee ... **the plaintiff must show that she and the other employee were similarly situated in all relevant respects** . . . [Plaintiff] referenced younger males, but nowhere in her complaint does she identify any valid comparators to undergird her disparate treatment claims.") (emphasis added); *Brezenski v. St. Thomas Univ., Inc.*, No. 20-24860-Civ, 2021 WL 3473847, at *3 (S.D. Fla. Aug. 6, 2021) ("The Plaintiff does not identify any comparators without a disability and who were promoted, who also had similar experience, applied for similar positions, and conducted similar research."); *Henderson v. Dade Cty. Police Benevolent Ass'n, Inc.*, No. 14-20321-Civ, 2014 WL 3591600, at *7 (S.D. Fla. July 18, 2014) (holding that the plaintiff's allegations that comparators were similarly situated were insufficient because the plaintiff had not alleged that the alleged comparators were equally or less qualified than the plaintiff); *Hyppolite-Marriott v. Florida Dep't of Veterans Affairs*, No. 0:21-CV-60352-RS, 2021 WL 5529871, at *6 (S.D. Fla. Nov. 2, 2021) (Smith, J.)[1], citing *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 298 (2015); *Jones v. Unity*

---

[1] In *Hyppolite*, this Court dismissed a PDA and FCRA pregnancy discrimination claim, holding held that the Complaint failed to allege "that non-pregnant employees with similar restrictions were accommodated . . . [w]hile Plaintiff does allege in her PDA claim that 'non-pregnant employees are accommodated as necessary' . . . she does not make the same allegation in her FCRA pregnancy discrimination claim. Moreover, such a vague, general allegation is not the same as alleging that non-pregnant employees in Plaintiff's position with similar standing and walking restrictions were accommodated." *Id*.

*Behavioral Health, LLC*, No. 20-14265, 2021 WL 5495578, at *2 (11th Cir. Nov. 23, 2021) (affirming dismissal of discrimination claims and holding "[n]othing in the amended complaint indicates that [Plaintiff's] alleged underpayment was connected to her race or national origin . . . she doesn't identify a comparator outside her protected classes who performed similar responsibilities but was paid more than she was.")[2].

Plaintiff does not allege that Floria replaced Plaintiff, but simply that Floria was added as a second bartender. If anything, the Amended Complaint supports the notion that female employees were treated the same as Plaintiff thereby undercutting any claim for discrimination based on sex (though the Amended Complaint largely revolves around discrimination due to pregnancy). As with the initial Complaint, there no indicia of discrimination, but an obvious admission that Plaintiff was dissatisfied with the fact that Defendant added more employees to the bartending shifts.

The remaining allegations reveal nothing more than employee who did not get along with her boss. *See, e,g.*, Am. Compl. ¶ 50 ("Ms. Elkhalil answered that she was unhappy with the current schedule because she was previously scheduled for busier shifts and knew that she would not be able to financially provide for herself with the new shifts."). Plaintiff was not required to give preferential treatment to Defendant simply because she was pregnant or because she wanted to make more money. *See Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1322 (11th Cir. 2000) (holding that "employers may comply with the PDA without giving preferential treatment to pregnant employees in the form of alternative work assignments"); *Armstrong v. Flowers Hosp., Inc.*, 33

---

[2] In *Jones*, the Court affirmed dismissal even though the Complaint alleged that her supervisor "used disparaging and racist language when interacting with Black employees" because "[Plaintiff's] stated belief that her race or national origin motivated these decisions is conclusory and unsupported by the factual allegations in the amended complaint." *Id*. at *3.

F.3d 1308, 1317 (11th Cir. 1994) ("Statements in the legislative history make it clear that the PDA does not require employers to extend any benefit to pregnant women that they do not already provide to other disabled employees."); *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 693 (M.D.Fla.1994) ("To require an employer to make reasonable accommodations for a pregnant employee is to require the employer to relinquish virtually all control over employees once they do become pregnant."); *Abbott v. Elwood Staffing Services, Inc.*, 44 F. Supp. 3d 1125, 1158 (N.D. Ala. 2014) ("The Pregnancy Discrimination Act does not require that employers give preferential treatment to pregnant employees."). Even so, the Amended Complaint fails to allege Plaintiff was not provided additional breaks or less physical duties in her role as a high-volume bartender. For this reason, as well, dismissal with prejudice is warranted, given Plaintiff's two attempts to plead that she failed to receive an accommodation that was required by law.

II. **Hostile Work Environment Claims (Counts II and VII)**

As with the previous counts, Plaintiff's federal and state law claims for hostile work environment are analyzed together as "the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework, . . . the state-law claims do not need separate discussion and their outcome is the same as the federal ones." *Alvarez* at 1271. "To state a Title VII hostile work environment claim, an employee must prove that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Estate of Caviness v. Atlas Air, Inc.*, 693 F. Supp. 3d 1271, 1282 (S.D. Fla. 2023), quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Stated another way, "[a] hostile work environment claim depends on a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Chambless v. Louisiana-Pac. Corp.*, 481 F.3d 1345, 1349 (11th Cir. 2007).

Additionally, Plaintiff must allege a "work environment is both subjectively and objectively hostile." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1249 (11th Cir. 2014). "The objective level of harassment is a circumstantial determination considering the discriminatory conduct's frequency, severity, whether physically threatening or humiliating, offensiveness, and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "It is well-settled that the terms and conditions of employment are not altered by "teasing, offhand comments, and isolated incidents (unless extremely serious)." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999).

The Amended Complaint repeats the same vague and conclusory allegation that she was "repeatedly belittled and mocked due to her pregnancy" (Am. Compl. ¶ 93). Plaintiff provides no allegations of, for example, instance, or occasion in which such conduct occurred, how she was belittled or mocked (such as specific statements made by a supervisor). Instead, Plaintiff alleges "physical threats of violence" (Am. Compl. ¶ 93) were made, skipping over what type of physical violence was alleged threatened by Mr. Camargo or how she was belittled or mocked repeatedly.

The Complaint is replete with accusations of "demeaning and abusive conduct" without a sufficient nexus to discrimination. If Plaintiff felt Defendant's conduct was so severe and pervasive, it can only be presumed that she can allege sufficient facts outlining such conduct. Plaintiff should not be permitted another attempt to make such serious allegations in a conclusory fashion, especially having two attempts to plead her case. Courts have found that similar conclusory allegations, such as that the Plaintiff "feared the safety of her unborn child . . .," are insufficient as it "fails to allege any supporting facts, such as to whom, when, and how she purportedly objected." *Louis*, 2020 WL 13389301 at *2. For these reasons, dismissal is warranted.

*See also* discussion *supra* Sec. 1(a); *Mensah*, 2020 WL 6701926; *Fortson*, 618 Fed. Appx. 601; *Adams*, 754 F.3d 1240, 1254; *Barrow*, 144 F. App'x 54, 57–58; *Barrett*, 2005 WL 5435098.

### III.   Failure to State a Claim Under the PWFA (Counts V and IV)

Plaintiff alleges two counts under the Pregnant Workers Fairness Act (PWFA). The PWFA went into effect on June 27, 2023, and generally requires an employer to make reasonable accommodations to **the known limitations related to pregnancy** unless such accommodation would impose an undue hardship on the operation of the business. 42 U.S. Code § 2000gg-1. The PWFA defines a "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions that the employee or employee's representative has **communicated** to the employer whether or not such condition meets the definition of disability specified in section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102)." *See also* 29 CFR 1636.3(b) (listing examples of "medical conditions" that would constitute a limitation under the PWFA).

The Amended Complaint remains devoid of any allegations that Plaintiff had a limitation related to her pregnancy, let alone that such limitations were known by or communicated to Defendant.  Plaintiff alleges in a conclusory fashion that "Ms. Elkhalil explained that her pregnancy related accommodations included additional breaks and limiting excessive physical exertion," failing to allege a "physical or mental condition related to, affected by, or arising out of pregnancy" as the plain text of the PWFA requires. *See* 42 U.S. Code § 2000gg-1; 42 USC § 2000gg(4). Yet Plaintiff fails to allege any complication, medical condition, or any other condition giving rise to a "limitation" within the context of PWFA. This warrants dismissal. *See Beddingfield v. United Parcel Serv., Inc*., No. 23-CV-05896-EMC, 2024 WL 1521238 (N.D. Cal. Apr. 8, 2024) (dismissing PWFA claim for failing to allege related medical condition or limitation); Johnson v.

13

Wag Hotels, Inc., No. 3:24-CV-3268-BN, 2025 WL 992573, at *5 (N.D. Tex. Apr. 2, 2025) (dismissing PWFA claim and holding plaintiff "offers no facts from which the Court may be infer that she requested an accommodation from [Defendant] based on the effects of pregnancy.")

Plaintiff also alleges the Defendant "failed to engage in the interactive process required under the PWFA by refusing to acknowledge or discuss Ms. Elkhalil's request for pregnancy-related accommodations." (Am. Compl. ¶ 144). That said, there could have been no interactive process if Plaintiff did not communicate a *known limitation* to Defendant. *See Keiper v. CNN Am., Inc.*, No. 24-CV-875, 2024 WL 5119353, at *3 (E.D. Wis. Dec. 16, 2024) (dismissing PWFA claim and holding "the interactive process should identify the known limitation under the PWFA and the adjustment or change at work that is needed due to the limitation, if either of these is not clear from the request, and potential reasonable accommodations."), citing 29 C.F.R. § 1636.3(k). As the Court in *Keiper* also reiterated, "[e]mployers only face liability under the PWFA for failure to accommodate their employee's known limitations. *Id*.

Plaintiff fails to plead both a medical condition/limitation and that she communicated these conditions or limitations to Defendant. Nor should these facts be taken as true given her contradictory allegations that she wanted to work longer and harder (by working alone). For these reasons, the PWFA claims should be dismissed.

**IV.   Failure to State a Claim for Title VII and FCRA Retaliation (Counts III and VIII)**

"In order to establish a prima facie case for retaliation, an employee must establish that (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal relation between the protected activity and the adverse action." *Penaloza*, 549 Fed. Appx. at 847; *see also Little v. CSRA, Inc.*, 834 Fed. Appx. 495, 499 (11th Cir. 2020) (same).

14

As with the discrimination claims, the analysis is the same for retaliation claims under Title VII and the FCRA. *See Alvarez*, 610 F.3d at 1271.

### a. Failure to Allege a Statutorily Protected Activity

Plaintiff attempts to allege various protected activities to support the first element of a retaliation claim under Title VII and FCRA. *See* Am. Compl. ¶¶ 119, 123, 153, 156, 190. Plaintiff alleges in a conclusory and vague fashion that she "explained that her pregnancy related accommodations included additional breaks and limiting excessive physical exertion, but Camargo did not respond (Am. Compl. ¶ 34)[3]. What undercuts any plausibility to Plaintiff's allegations is the contradiction that she wanted additional breaks and to limit physical assertion but was dissatisfied that she could no longer be the "lone bartender" as she had done for years (Am. Compl. ¶ 24, 29, 34). **Most importantly, nowhere in the Amended Complaint does Plaintiff actually allege that she was deprived of additional breaks or excessive physical exertion, or that she was somehow unable to take such additional breaks or limit physical exertion**. Beyond this, Plaintiff merely reiterates the same boilerplate assertions as the prior pleading (only this time with profanities[4]) regarding her volatile relationship with Mr. Camargo and that the two did not get alone – failing to allege a causal link between staff changes at the restaurant and intentional discrimination[5].

---

[3] Plaintiff conveniently removes reference in her amended pleading to the fact that Mr. Camargo responded "ok" in response to her request for additional breaks (Compl. ¶ 30, ECF No. 1), which raises questions about the veracity of her initial Complaint.

[4] To reiterate "[t]he statements at issue must reflect a discriminatory attitude and tie the discriminatory attitude to the relevant employment decision . . . [t]he Supreme Court [has] cautioned, "offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." *Mejdoub*, 2016 WL 4369968, at *5-8; *see also* discussion *supra* Sec. 1(a), p.6.

[5] The Eleventh Circuit recognized in *Penaloza,* 549 Fed. Appx. at 847, *that* "[a]s to the last element, temporal proximity by itself can be enough to show causation; the events, however, must be very close . . . [w]e have held, for example, that three months is not close enough, where there is no other evidence of a

15

Effectively, the Amended Complaint admits that Plaintiff could still perform her duties while pregnant, and just as if she were not pregnant, given she was upset that she could not remain the "lone" bartender hauling in all the tips for herself (and now had to share them with Floria). Courts have dismissed retaliation claims under these circumstances. *See Kessler*, 2017 WL 5178351, at *2 (dismissing retaliation claims because "Plaintiff's statements are more analogous to a reassurance that she can still perform her duties while pregnant"); *see also Abbott,* 44 F. Supp. 3d 1125, 1158 ("Under the Pregnancy Discrimination Act, the plaintiff was not entitled to a modified duty assignment solely because she was pregnant." "[A]n employer violates the [Pregnancy Discrimination Act] when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions."), citing *McQueen v. AirTran Airways, Inc*., 3:04–CV–00180–RS–EMT, 2005 WL 3591100 at *5 (N.D.Fla. Dec. 30, 2005).

Additionally, as explained, Plaintiff's vague allegation that Defendant "foster[ed] an abusive and hostile work environment by berating Ms. Elkhalil on a regular basis, subjecting her to degrading treatment that interfered with her ability to perform her job," providing no detail whatsoever as to how this transpired, who and when and "abusive" or "degrading" statements or conduct took place. The Amended Complaint fails to allege a statutorily protected warranting dismissal of the retaliation claims.

---

causal link." *Id*. Plaintiff fails to give the Court sufficient facts to even undertake this analysis as there is no timeline of the alleged retaliatory acts alleged at all. Instead, Plaintiff alleges slew of vague, unspecific acts that she reiterates throughout the Amended Complaint, none of which refer to a specific instance in time.

**CONCLUSION**

For the reasons detailed above, the Amended Complaint fails to state a claim upon which relief can be granted. Plaintiff has not provided sufficient factual allegations to support claims of discrimination, hostile work environment, or retaliation under Title VII, the Florida Civil Rights Act (FCRA), or the Pregnant Workers Fairness Act (PWFA). The allegations are vague, conclusory, and lack the necessary specificity to establish direct or circumstantial evidence of discrimination or retaliation. Nor has the Plaintiff demonstrated that she communicated any known limitations related to her pregnancy that would necessitate accommodations under the PWFA. Accordingly, the Complaint should be dismissed with prejudice as Plaintiff has had two opportunities to plead sufficient facts to state a claim.

Respectfully submitted,

**BLACK LAW P.A.**
*Counsel for Defendant*
1401 E. Broward Blvd., Suite 204
Fort Lauderdale, Florida, 33301
ph. 954-320-6220/f. 954-320-6005

/s/ *Cody Shilling*
_____
**KELSEY K. BLACK, ESQ.**
Fla. Bar No. 78925
kb@blacklawpa.com
**CODY J. SHILLING, ESQ.**
Fla. Bar No. 1010112
cs@blacklawpa.com