**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

ASIA ELKHALIL,

       Plaintiff,                                          CASE NO.: 0:25-cv-60391-RS

v.

EAST BEACH LLC *d/b/a*
PIER 14 TAPAS AND COCKTAILS,

       Defendant.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiff, ASIA ELKHALIL ("Plaintiff"), hereby files her Response in Opposition to Defendant's, EAST BEACH, LLC's d/b/a PIER 14 TAPAS AND COCKTAILS ("Defendant"), Motion to Dismiss Amended Complaint ("Defendant's Motion" and/or "Motion"). In support, Plaintiff states as follows:

**INTRODUCTION**

Defendant's Motion seeking dismissal of Plaintiff's Amended Complaint ("Complaint") is overreaching and must be denied. As set forth herein, Plaintiff's Amended Complaint contains sufficient factual allegations to put Defendant on adequate notice of the claims against it and the grounds upon which they rest, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg ("PWFA"); and the Florida Civil Rights Act of 1992, § 760.01, Florida Statutes ("FCRA").

Plaintiff has properly stated claims against Defendant for disparate treatment, hostile work environment, and retaliation on the basis of her sex and pregnancy in violation of Title VII, the PWFA, and the FCRA. Defendant's Motion fails to establish any meaningful pleading deficiencies

and asks this Court to make determinations inappropriate at the motion to dismiss stage. For this and other reasons, Plaintiff respectfully requests that this Honorable Court deny the Defendant's Motion in its entirety.

## **STANDARD OF LAW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Arista Records. LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). The standard is one of "flexible plausibility," "requiring a pleader to amplify her complaint with sufficient factual allegations to 'nudge [her] claims across the line from conceivable to plausible.'" *Chepak v. Metro. Hosp.*, No. 13 Civ. 1726, 2014 WL 552682, at *1 (2d Cir. Feb. 13, 2014) (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion to dismiss, the Court must "assume [the] veracity" of the allegations set forth, draw all "reasonable inference[s]" in the plaintiff's favor, and use its "judicial experience and common sense" to conduct a "context-specific" analysis of the complaint. *Iqbal*, 556 U.S. at 678–79. Federal Rule of Civil Procedure 8(a)(2) does not require the plaintiff to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, *Arista Records*, 604 F.3d at 119–21, but only facts sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations omitted).

"Under *Iqbal* and *Twombly*, then, in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, No. 14-2265-CV, 2015 WL 5127519, at *11 (2d Cir. Sept. 2, 2015). In determining whether the complaint states a plausible discrimination case, a "court must be mindful of the 'elusive' nature of intentional discrimination." *Id.* at 11.

## LEGAL ARGUMENT

I.  **Plaintiff Has Established a *Prima Facie* Case of Discrimination in Violation of Title VII, the PWFA and the FCRA.**

Plaintiff's Amended Complaint properly establishes claims against Defendant for disparate treatment under Title VII, the PWFA and the FCRA. Specifically, Plaintiff asserted claims against Defendant for sex and pregnancy discrimination under Title VII (Count I), the PWFA (Count IV), and the FCRA (Count VI). Plaintiff's claims satisfy the pleading requirements necessary to survive a motion to dismiss and include sufficient facts to put Defendant on notice of the claims asserted against it.

As the Eleventh Circuit has made clear, plaintiffs in employment discrimination cases are not required to satisfy the elements of the *McDonnell-Douglas* framework to survive a motion to dismiss. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1270–71 (11th Cir. 2004); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–11 (2002) (finding pleadings sufficient when they give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest). This is because *McDonnell Douglas*'s burden-shifting framework is an evidentiary standard, not a pleading requirement. *See Swierkiewicz*, 534 U.S. at 510. Plaintiffs in employment discrimination claims need only provide enough factual matter, that when taken as true, suggest intentional discrimination. *See Surtain v. Hamlin Terrance Found.*, 789 F3d 1239, 1246 (11th Cir. 2015).

3

Plaintiff has nonetheless satisfied the elements of the *McDonnell-Douglas* framework, which include: (1) Plaintiff is a member of a protected class; (2) Plaintiff was subjected to an adverse employment action; (3) Plaintiff's employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) Plaintiff was qualified to do the job. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

As a pregnant female, Plaintiff is a member of a protected class, thus satisfying the first element. Am. Compl., ECF No. 22, ¶¶ 20–21. Plaintiff was subjected to a litany of discriminatory acts on account of her sex and pregnancy. Am. Compl., ECF No. 22, ¶ 95, 140, 166. Shortly after Plaintiff's disclosure of her pregnancy to Defendant, Defendant intentionally assigned her a less-favorable schedule on the basis of her pregnancy. Am. Compl., ECF No. 22, ¶¶ 60–63, 82, 95—96, 140—141, 166—167. Further, Defendant terminated Plaintiff's employment on the basis of her pregnancy. Am. Compl., ECF No. 22, ¶¶ 63–68, 79, 95, 140, 166. As discussed further herein, these actions are more than sufficient to establish an adverse employment action under the second element of Plaintiff's claim.

As clearly established in the Amended Complaint, Plaintiff was subjected to this discriminatory conduct solely on account of her being a pregnant female. *See, e.g.*, Am. Compl., ECF No. 22, ¶¶ 60—68, 79, 82, 92—96, 140—141, 166—167. None of Plaintiff's male or non-pregnant female colleagues were subjected to similar treatment, which satisfies the third element of Plaintiff's claims. Am. Compl., ECF No. 22, ¶¶ 80, 96, 141, 167. Defendant's male or non-pregnant female employees that enjoyed preferential treatment in comparison to Plaintiff, include but are not limited to, Floria Gerardino ("Floria"), an individual non-pregnant female; Victor Benlice ("Benlice"), an individual male; Tyler Foy ("Foy"), an individual male; and Dieudonne Walker ("Walker"), an individual non-pregnant female, all of whom worked in a service capacity,

4

reported to the same supervisor (Camargo), and worked overlapping shifts with Plaintiff under identical scheduling protocols.

Defendant openly tolerated discriminatory conduct towards Plaintiff as evidenced by the use of inappropriate comments and profanities including the following: "fuck you," "get the fuck out of the restaurant," "get out of here, you fucking bitch," "you are trashy and ghetto," and "I'm the manager! I make the schedule! You're pregnant! What schedule to do expect to get!" Am. Compl., ECF No. 22, ¶¶ 60, 64—65.

Defendant's Motion fails to acknowledge the relevant portions of Plaintiff's Amended Complaint which highlight Camargo's exact discriminatory remarks. Defendant's Motion incorrectly states that Plaintiff alleges she was belittled and mocked "without a single, specific statement made by Mr. Camargo… a timeline of these statements," and "in what context they were made…" Def. Mot., ECF No. 24 at p.5. Not only does Defendant overlook the Amended Complaint where Plaintiff cites Camargo's discriminatory language, but Defendant also brushes over the specificity of the context provided as to Camargo's statements. Plaintiff's Amended Complaint sufficiently details the date, time, and location in which Camargo made these statements, and further notes any witnesses who may have been present at the time Camargo made those disparaging remarks to Plaintiff. Am. Compl., ECF No. 22, ¶¶ 49, 57—69, 95, 140, 166.

Defendant's failure to acknowledge these clearly established allegations results in its unpersuasive argument that, "[t]he Amended Complaint recycles the same conclusory and vague statements… providing no detail whatsoever as to how this transpired, and when such 'abusive' or 'degrading' statements or conduct took place." Def. Mot., ECF No. 24, at p. 5. Again, Plaintiff includes this specific information in her 'material facts' section and further realleges Camargo's

5

exact discriminatory remarks in each individual cause of action for discrimination. Am. Compl., ECF No. 22, ¶¶ 60, 64—65, 95, 140, 166.

As to the fourth element of her *prima facie* case, Plaintiff has successfully pleaded that she was qualified for her position based on her years of experience as a bartender and her exemplary work performance. Am. Compl., ECF No. 22, ¶¶ 23, 27.

Additionally, Defendant's Motion repeatedly overlooks key statements made in Plaintiff's Amended Complaint. In its Motion, Defendant claims "Plaintiff conveniently removes reference in her amended pleading to the fact that Mr. Camargo responded 'ok' in response to her request for additional breaks, which raises questions about the veracity of her initial Complaint." Def. Mot. at p. 15, fn 3. However, this is entirely incorrect. Plaintiff's Amended Complaint includes the exact same language in paragraph 31 as in paragraph 30 of Plaintiff's Complaint: "Camargo, uninterested, remained facing the computer and replied, 'ok,' and ended the conversation." Am. Compl. ¶ 31. Defendant's frequent oversight and disregard of Plaintiff's pleading has resulted in its failure to properly evaluate the sufficiency and veracity of Plaintiff's Amended Complaint.

    a. *Picado, Stephens, and Mensah*

        i. *Picado v. M&S Cargo Express Corp*

Defendant cites to *Picado v. M&S Cargo Express Corp* and *Stephens v. Adler Soc., LLC*, to argue "Plaintiff's addition of profanities to the amended pleading" cannot bolster her argument that Defendant discriminated against her. Def. Mot., ECF No. 24, at p. 5. However, Plaintiff's Amended Complaint is wholly comparable to the pleadings in *Picado* and *Stephens*. In *Picado*, the complaint establishes the plaintiff was a member of a protected class and that a supervisor told the plaintiff "[y]ou are too old… I cannot trust your skills… I cannot have old people working here." *Picado* at 7. The Southern District concluded that this statement, "taken as true, provides

the Court with enough factual matter to establish the existence of discriminatory intent when [defendant] terminated Picado. *Id*. (citing *Carter v. City of Miami*, 870 F.2d 578, 582 n.10 (11th Cir. 1989)).

In this case, Plaintiff alleges that her supervisor made the following statements to her: "I'm the manager! I make the schedule! You're pregnant! What schedule to do expect to get!"; "fuck you," "get the fuck out of the restaurant,"; "get out of here, you fucking bitch,"; and "you are trashy and ghetto." Am. Compl., ECF No. 22, ¶¶ 60, 64—65. These statements, taken as true, establish discriminatory intent when Defendant terminated Plaintiff.

The Southern District of Florida denied M&S Cargo Express Corp's motion to dismiss because "[d]efendant mistakenly conjoins the plausibility standard— that a 'complaint must contain sufficient factual matter, as accepted as true, to 'state a claim to relief that is plausible on its face'— with an evidentiary tool that is ordinarily reserved for summary judgment and not at the motion to dismiss phase.'" *Id*. at 6 (S.D. Fla. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 at 570 (2007)). The Court continues, "because Plaintiff does not need to prove a McDonnell Douglas *prima facie* case—which requires a showing that Plaintiff was treated less favorably than a younger [*8] similarly situated employee—the Court need not address Defendant's argument regarding the 'proof' or lack thereof of a comparator at this juncture." *Id*. at 7-8 (citing *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939 (11th Cir. 2023)). Similarly to *Picado*, Plaintiff has fulfilled her burden to plead Defendant's discriminatory intent, and therefore Defendant's Motion must be denied.

  ii.  *Stephens v. Adler Soc.*

The Southern District of Florida held in *Stephens* that "[t]he complaint contains enough factual allegations to plausibly suggest [*10] intentional discrimination. Plaintiff's supervisor's

statements that the owners would not like that she is pregnant, the proximity of the Defendant's actions and Plaintiff's termination to her disclosure of pregnancy, and the change in Plaintiff's treatment immediately following the disclosure of her pregnancy all strongly suggest intentional discrimination." *Stephens v. Adler Soc., LLC*, 2021 U.S. Dist. LEXIS 215033 at 9-10 (S.D. Fla. 2021).

Plaintiff's Amended Complaint, like the complaint in *Stephens*, explains with sufficient detail that her supervisor did not like the she was pregnant, Defendant's adverse actions against Plaintiff (including the negative alteration of her shift and schedule, reduction in scheduled work hours, and termination) were proximate to her disclosure of pregnancy, and the change in Plaintiff's treatment immediately followed the disclosure of her pregnancy. *See, e.g.*, Am. Compl., ECF No. 22, ¶¶ 60—68, 79, 82, 92—96, 140—141, 166—167. In *Stephens*, the Court denied defendant's motion to dismiss because the allegations suggested intentional discrimination. *Stephens* at 10. If taken as true, Plaintiff's Amended Complaint undoubtedly suggests intentional discrimination, and as a result, Defendant's Motion must be denied.

      **iii.**     ***Mensah v. Mnuchin***

Defendant claims Plaintiff's Amended Complaint is most similar to the complaint brought forth in *Mensah v. Mnuchin*. Def. Mot., ECF No. 24, at p. 6 ("This case is more akin to *Mensah v. Mnuchin*… [a]s in *Mensah*, Plaintiff fails to provide any context as to the systematic and/or pervasive conduct by Mr. Camargo as she alleges.") First and foremost, the Court in *Mensah* granted dismissed discrimination claims under a theory of hostile work environment, not disparate treatment. *Mensah v. Mnuchin*, 2020 U.S. Dist. LEXIS 212311 at p. 37-38 (S.D. Fla. 2020) ("Plaintiff proceeds under a hostile work environment theory."). Under Title VII and the FCRA, disparate treatment and hostile work environment maintain distinct *prima facie* elements and are

8

not subject to the same analysis. Therefore, the opinion in *Mensah* is inapplicable to Plaintiff's claims under Counts I and VI of her Amended Complaint, which sufficiently plead a cause of action for disparate treatment.

This case is further distinct from *Mensah* where the *Mensah* Court explains, "there are no factual allegations establishing what was said or when and how often this conduct occurred…" and "[p]laintiff's vague allegations a non-supervisor made offensive and negative comments and posted an extremely offensive picture do not raise the inference that he was subjected to a 'workplace [] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Id.* at pp. 40-41. Plaintiff's Amended Complaint highlights direct statements made by her supervisor, Camargo, and details when and where these statements were made. Am. Compl., ECF No. 22, ¶¶ 60, 64—65. Further, this case is distinguishable from *Mensah* because the alleged bad-actor here is Plaintiff's direct supervisor who could alter the conditions of her employment, whereas the alleged bad-actor in *Mensah* was a non-supervisor colleague. As such, the decision in *Mensah* dismissing a claim of discrimination, cannot be persuasive in the instant matter.

### A.     Plaintiff Was Subjected to Adverse Employment Actions

An adverse employment action is established when the employee shows "that a decision of the employer impacted the terms, conditions, or privileges of [his] job in a real and demonstrable way." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018) (cleaned up). In alleging an adverse employment action, the employee must show that the change in terms, condition, or privileges of employment were "serious and material . . . so that a reasonable person in the

circumstances would find the employment action to be materially adverse." *Id.* (internal quotation marks omitted) (citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)).

Here, Defendant states, "Plaintiff leaves the Court and the Defendant to sift through all her allegations to determine which 'adverse employment action' she refers... and fails to allege a direct correlation between any statements made by Defendant, with an adverse employment action." Def. Mot., ECF No. 24, at p. 7. Defendant seemingly fails to acknowledge the Amended Complaint where it lists the extensive number of adverse actions taken against her by Defendant. Plaintiff's Amended Complaint establishes a concise list of adverse actions that Defendant took against her on the basis of her sex and pregnancy, including but not limited to the following: "intentionally assigning Ms. Elkhalil less favorable work shifts due to her pregnancy, directly reducing her ability to earn tips and undermining her financial stability;" "deliberately staffing additional employees on Ms. Elkhalil's shifts for the purpose of diluting her earnings, effectively cutting her wages in half and penalizing her for being pregnant;" "and unlawfully terminating Ms. Elkhalil's employment." Am. Compl., ECF No. 22, ¶¶ 95, 140, 166.

It is well established that at minimum, a termination is the ultimate adverse action an employer can take against its employee. *Clermont v. Frenchman's Creek Country Club, Inc.*, 2001 U.S. Dist. LEXIS 1156 at 18 (S.D. Fla. 2001) ("a discharge from employment which was either a temporary suspension or permanent termination – this event clearly qualifies as an 'ultimate' employment decision of a genre which constitutes an 'adverse employment action.'"). At this Motion to Dismiss stage of the proceedings, Plaintiff's Amended Complaint has sufficiently alleged that she suffered an adverse action and therefore successfully established this prong of her *prima facie* case.

**B.     Plaintiff Was Subjected to Sex and Pregnancy Discrimination in Violation of Title VII, the PWFA and the FCRA**

Discrimination claims brought under Title VII can be categorized as either mixed-motive or single-motive claims. *Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016)). Single-motive claims are analyzed using the elements of the *McDonnell-Douglas* framework. *Stevenson v. City of Sunrise*, 2021 U.S. App. LEXIS 30858, at *17. Mixed-motive claims can be established by showing that illegal bias, such as bias based on sex or gender, "was a motivating factor for" an adverse employment action, "even though other factors also motivated" the action. *Quigg*, 814 F.3d at 1235 (quoting 42 U.S.C. § 2000e—2(m)). Mixed-motive claims require that the plaintiff show (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was a motivating factor for the defendant's adverse employment action. *Id.* at 1239.

Plaintiff has established a *prima facie* case of sex and pregnancy discrimination under either standard of proof.[1] As an individual pregnant female, Plaintiff is a member of a protected class. As previously addressed, Plaintiff was subjected to adverse employment actions, including but not limited to unfavorable schedules and reduction in scheduled work hours, unfavorable co-bartending shift assignments, and termination.[2] Defendant's male and non-pregnant female employees received more favorable treatment than Plaintiff and were not subjected any of the same adverse employment actions, including but not limited to Floria, Benlice, Foy, and Walker.

---

[1] Plaintiff can pursue her Title VII claim under either standard at the pleading stage. *Daneshpajouh v. Sage Dental Grp. of Fla., PLLC*, 2021 U.S. Dist. LEXIS 155555, at *21 (citing *EEOC v. TBC Corp.*, 532 F. App'x 901, 902-903 (11th Cir. 2013)) (stating that a plaintiff is not required to state whether they are pursuing a single-motive or mixed-motive framework in the complaint because they are different legal theories as opposed to distinct causes of action).

[2] *See* discussion *supra* Part I.A.

Plaintiff was called a "fucking bitch" by her manager in front of her coworkers and long-standing customers. Am. Compl., ECF No. 22, at ¶¶64, 95, 140, 166. Importantly, the Southern District of Florida has held that "when a co-worker calls a female employee a 'bitch,' the word is gender-derogatory." *Anderson v. City of Fort Pierce*, 2015 U.S. Dist. LEXIS 178144 at 12 (S.D. Fla. 2015) (citing *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir. 2010)). The Court continued, "'[i]t is humiliating and degrading based on sex.'" *Id.* ("holding that plaintiff established a reasonable inference that defendant discriminated against her, rendering summary judgment on her claims of intentional sexual discrimination under [Title VII] and [the FCRA] improper.") (citing *Degitz v. S. Mgmt Servs., Inc.*, 996 F. Supp. 1451, 1456 (M.D. Fla. 1998)).

The use of derogatory slurs towards Plaintiff provides evidence of Defendant's discriminatory animus on the basis of Plaintiff sex. Taken as a whole, these facts are sufficient to give rise to an inference of discrimination. Accordingly, Plaintiff, at a minimum, has met the more lenient mixed-motive standard for his Title VII discrimination claim. *See Beyer v. Miami-Dade Cty.*, 2019 U.S. Dist. LEXIS 23588, at *76.

### C. Plaintiff's PWFA Claim for Discrimination

Plaintiff sufficiently pleaded that she had known limitations related to her pregnancy that were communicated to Defendant. Defendant's Motion fails to acknowledge Plaintiff's allegations in her Amended Complaint, stating the following:

> "[t]he Amended Complaint remains devoid of any allegations that Plaintiff had a limitation related to her pregnancy, let alone that such limitations were known by or communicated to Defendant. Plaintiff alleges in a conclusory fashion that … as the plain text of the PWFA requires. Yet Plaintiff fails to allege any complication, medical condition, or any other condition giving rise to a 'limitation' within the context of PWFA."

Def. Mot., ECF No. 24, at p. 13. Again, Defendant entirely disregards the content of Plaintiff's Amended Complaint. Plaintiff clearly established that, "[Plaintiff] was experiencing morning

12

sickness and nausea… further felt physically weaker as a result of her pregnancy, impacting her ability to lift or carry heavy items… [and] further impacted her ability to concentrate and focus." Am. Compl., ECF No. 22, at ¶ 137. Plaintiff continued, "[Plaintiff] also needed to use the restroom more frequently as a result of her pregnancy, further requiring additional breaks." *Id*. at ¶ 33.

Plaintiff has clearly explained both physical and mental conditions relating to, affected by, or arising out of pregnancy. Plaintiff described in her Amended Complaint that, "[Plaintiff] informed [Camargo] that she was pregnant… and that she would need pregnancy-related accommodations moving forward." Am. Compl., ECF No. 22, at ¶ 31. Plaintiff continued to allege that, "[she] asked if she could obtain pregnancy accommodations including additional breaks and limitations on physical exertions as her pregnancy-related medical conditions became more serious." *Id*. at ¶ 32.

Although Defendant considers this language to be "conclusory," the Southern District of Florida has disagreed with Defendant's position. In *Wahl v. Seacoast Banking Corp*., the Court ruled that, "[a]s discussed above, the time [plaintiff] took away from work for prenatal care appointments or for conditions of pregnancy, such as morning sickness, is statutorily protected." *Wahl v. Seacoast Banking Corp.*, 2011 U.S. Dist. LEXIS 24115 at 26 (S.D. Fla. 2011) (denying defendant's motion for summary judgment). Although the Court in *Wahl* assessed the plaintiff's FMLA rights, the protection afforded to pregnant women for morning sickness is applied throughout, including ADA claims. *See Mayorga v. Alorica, Inc.*, 2012 U.S. Dist. LEXIS 103766 (S.D. Fla. 2012) (denying defendant's motion to dismiss where plaintiff includes morning sickness as a known limitation to her pregnancy that also contributes to a qualifying disability) (citing *Garrett v. Chicago Sch. Reform Bd. of Trs.*, 1996 U.S. Dist. LEXIS 10194 at 3 (N.D. Ill. 1996) (noting that '[t]he duration or severity of plaintiff's morning sickness cannot be determined from

the present record. In any event, such factual determinations are not properly decided on a motion to dismiss.')) (citing *Gorman v. Wells Mfg. Corp.*, 209 F. Supp 2d 970 (S.D. Iowa 2002) ('noting that nausea, vomiting, and extreme fatigue are symptoms associated with a normal pregnancy.')).

Not only has Plaintiff established her burden of pleading known limitations related to pregnancy that were communicated to Defendant, she further alleged that Defendant failed to grant any of her accommodation requests or engage meaningfully in an interactive process. As pleaded, after establishing her known limitations to Camargo, Plaintiff shows that her effort to engage in the interactive process with Defendant was futile, simply drawing the response, "ok," after several attempts to obtain an accommodation.

As such, Defendant's Motion must be denied.

## II. **Plaintiff Has Established a *Prima Facie* Case of Hostile Work Environment in Violation of Title VII and the FCRA**

To establish a *prime facie* case of hostile work environment, the Plaintiff must show (1) that Plaintiff belonged to a protected group; (2) Plaintiff was subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In analyzing whether the conduct was objectively hostile, courts analyze several factors, including (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance. *Thompson v. City of Miami Beach*, 990 F. Supp. 2d 1335,

14

1339–1140 (S.D. Fla. 2014) (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).

Plaintiff has established each of the above-mentioned elements under Title VII and the FCRA. Plaintiff is a member of a protected class as a pregnant female. Am. Compl., ECF No. 22, ¶¶ 20-21. Plaintiff was subjected to humiliating and isolating conduct on account of her sex and pregnancy, including: 1) subjecting Ms. Elkhalil to a demeaning and abusive work environment where she was repeatedly belittled and mocked due to her pregnancy, including Camargo telling Ms. Elkhalil, "I'm the manager! I make the schedule! You're pregnant! What schedule do you expect to get!?", "fuck you, get the fuck out of the restaurant, get out of here you fucking bitch!" and calling her "trashy and ghetto," 2) subjecting her to numerous threats of physical violence, including an incident where Camargo aggressively confronted her, pointed his finger in her face, balled his hand into a fist before raising his fist back in the air as if he was going to punch Ms. Elkhalil, causing Ms. Elkhalil to fear for her safety and that of her unborn child, and 3) unlawfully terminating Ms. Elkhalil's employment because of her pregnancy after she was subjected to a less favorable schedule and shift. *See, e.g.*, Am. Compl., ECF No. 22, ¶¶ 60, 64, 65, 107, 178.

In *Faragher v. City of Boca Raton*, the Supreme Court concluded that an employer "is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). In this case, Plaintiff was harassed by a supervisor, Camargo, who was a direct supervisor, thus satisfying Defendant's vicarious liability for Camargo's conduct.

Defendant contends that Plaintiff's allegations are insufficient to state a claim for hostile work environment because they lack detail, "such as specific statements made by a supervisor."

Def. Mot., ECF No. 24 at p. 12. This argument again falls short as Defendant continues to ignore the specific dates, locations, witnesses, and statements that Plaintiff alleges in her Amended Complaint regarding Defendant's harassing conduct. Am. Compl., ECF No. 22, ¶¶ 57—68, 71—74, 107, 178. Defendant further fails to acknowledge the severity of Camargo making threats of physical harm to a pregnant woman, putting her life and her unborn child's life at risk. Plaintiff's Amended Complaint contains a wide array of sufficient factual allegations to put Defendant on notice of Plaintiff's hostile work environment claims and the grounds upon which they rest. Accordingly, Defendant's Motion to Dismiss the Plaintiff's hostile work environment claims must also be denied.

### III.  Plaintiff Has Established a *Prima Facie* Case of Retaliation Under Title VII, the PWFA and the FCRA

The FCRA's retaliation provision is virtually identical to Title VII's retaliation framework. *See Suncoast Architecture & Eng'g, LLC v. Tuzlak*, 2015 Fla. Cir. LEXIS 10761 at *9 (Fla. Cir. 2015). In order to establish a claim for retaliation under Title VII, the Plaintiff must show (1) he participated in a statutorily protected expression; (2) he suffered a materially adverse action; and (3) there was some causal connection between the two events. *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (citations omitted).

Here, Plaintiff has established each element of her retaliation claims. First, Plaintiff participated in a statutorily protected expression by reporting and opposing sex and pregnancy discrimination and an unlawfully hostile work environment. Second, Plaintiff suffered materially adverse actions as discussed above, including but not limited to the imposition of unfavorable work schedules and reduction in scheduled work hours, unfavorable co-bartending shift assignments, and unlawful termination. Last, there is a causal link connecting Plaintiff's protected activity to her termination.

### A. Protected Activity

It is well established that "[a] complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Hamilton v. Sheridan Healthcorp Inc.*, 602 F. Appx. 485, 489 (11th Cir. 2015). Further, "[m]aking a good faith request for an accommodation based on an objectively reasonable belief that one is entitled to accommodation can constitute protected activity." *Hyppolite-Marriott v. Fla. Dep't of Veterans Affairs*, 2021 U.S. Dist. LEXIS 211700 at 15-16 (S.D. Fla. 2021) (citing *Standard v. A.B.E.L. Servs., Inc.* 161 F.3d 1318, 1328 (11th Cir. 1998).

In this case, Plaintiff successfully alleged that she engaged in protected activity by requesting pregnancy-related accommodations and by complaining about sex and pregnancy discrimination and a hostile work environment to her direct manager, Douglas Camargo. Am. Compl., ECF No. 22, ¶¶ 31—35, 59—74, 83, 119, 153, 190, 191. In fact, Plaintiff's Amended Complaint alleges as follows: "Ms. Elkhalil explicitly told Defendant that its actions were discriminatory and unlawful, and she complained about Defendant's actions to her manager, Camargo." Am. Compl., ECF No. 22, ¶¶ 120, 191. As pleaded, Plaintiff has successfully established the first prong of her retaliation claim.

### B. Materially Adverse Action

The analysis for a materially adverse action within a retaliation context is consistent with an adverse employment action under discrimination.[3] Plaintiff alleged in her Amended Complaint that shortly after disclosing her pregnancy and requesting pregnancy accommodations to

---

[3] *See* discussion *supra* Part I.A.

Defendant, Defendant detrimentally altered her schedule and shift. Am. Compl., ECF No. 22, ¶¶ 31—53. The Amended Complaint continues to allege that Plaintiff opposed Defendant's decision regarding her less-favorable shift and schedule assignment, claiming the adverse actions were discriminatory on the basis of her sex and pregnancy, and Defendant terminated her on the very same day. Am. Compl., ECF No. 22, ¶¶ 59—78. As alleged, Plaintiff opposed Defendant's decision to terminate her, and Camargo further threatened her and her unborn child with physical harm. Am. Compl., ECF No. 22, ¶¶ 69—79. As such, Plaintiff successfully established that Defendant took materially adverse actions against her.

### C. Causal Connection

To prove causal connection, "a plaintiff must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (citing *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002)). "Generally, a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) (citing *Brungart v. BellSouth Telecomm.'s, Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). Typically, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart* 231 F.3d at 799 (11th Cir. 2000)

Here, Plaintiff clearly alleges that she disclosed her pregnancy to Camargo on April 12, 2024, and concurrently requested pregnancy accommodations including additional breaks and limitations on physical exertions. Am. Compl., ECF No. 22, ¶ 31. Plaintiff continues to allege that

on "[t]he very next day… Camargo had scheduled Floria [] to bartend shifts alongside Ms. Elkhalil." *Id*. at¶ 39. Plaintiff discussed the new schedule with Camargo on April 15, April 18, and April 21. *Id*. at ¶¶45, 48, 49. As stated in the Amended Complaint, Camargo told Plaintiff on April 21, 2024 that, "I'm the manager! I make the schedule, You're pregnant! What schedule did you expect to get!?" *Id.* at ¶ 60. The Amended Complaint clearly establishes that Plaintiff opposed this treatment, "asking if she was given a less favorable schedule because of her pregnancy," before Camargo terminated her and made physical threats of harm against her and her unborn child. *Id*. at ¶¶ 61—74. Plaintiff clearly explains a series of events that give rise to a *prima facie* case of retaliation by including individuals, dates, locations, witnesses, and statements.

      Ultimately, Defendant's Motion entirely fails to identify or sufficiently combat Plaintiff's alleged protected activity, materially adverse actions, or causal connection. Def. Mot., ECF No. 24, at pp. 15-16. Defendant's analysis in the "failure to allege a statutorily protected activity" section simply discusses Plaintiff's request for accommodations and fails to consider all of Plaintiff's protected activities rather than her opposition to discrimination. *Id*. Defendant's Motion then continues, "Plaintiff merely reiterates the same boilerplate assertions… regarding her volatile relationship with Mr. Camargo and that the two did not get alone [*sic*] failing to allege a causal link between staff changes at the restaurant and intentional discrimination." *Id*. Defendant's Motion fails to discuss Plaintiff's *prima facie* case of retaliation, rather it proceeds to offer a surface-level discussion of causal connection without reference to precedent, before briefly touching on Plaintiff's ability to perform work, and her general claim of hostile work environment.

      As such, Defendant's Motion must be denied as to all counts of retaliation.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint, in its entirety. Alternatively, should the Court find in favor of the Defendant on any of the aforementioned issues, the Plaintiff respectfully requests that this Court grant leave to amend the Complaint and cure any deficiencies.

Dated: Miami, Florida
June 2, 2025,

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.
Florida Bar No. 1049271
Derek Smith Law Group, PLLC
520 Brickell Key Drive, Suite O-301
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741
danielb@dereksmithlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document is being served on June 2, 2025, on all counsel of record on the Service List below via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Daniel J. Barroukh*
Daniel J. Barroukh, Esq.

## SERVICE LIST

**BLACK LAW, P.A.**
Cody J. Shilling, Esq.
Fla. Bar No. 1010112
Email: cs@blacklawpa.com
1401 E. Broward Blvd., Suite 204
Fort Lauderdale, Florida, 33301
Telephone: 954-320-6220
Fax: 954-320-6005
*Counsel for Defendant*