UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-60391-CIV-SMITH

ASIA ELKHALIL,

    Plaintiff,

vs.

EAST BEACH, LLC,

    Defendant.
                                      /

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant's Motion to Dismiss Amended Complaint [DE 24], Plaintiff's Response [DE 25], and Defendant's Reply [DE 26]. Plaintiff's Amended Complaint [DE 22] alleges that she was subject to discriminatory behavior based on her gender and her pregnancy. Plaintiff's Amended Complaint brings eight counts under Title VII of the Civil Rights Act of 1964, The Florida Civil Rights Act ("FCRA"), and the Pregnant Workers Fairness Act ("PWFA"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant seeks to dismiss all of Plaintiff's claims for failure to state a cause of action. For the following reasons, the Motion to Dismiss is granted in part and denied in part.

### I.    ALLEGATIONS IN THE AMENDED COMPLAINT

Defendant runs a restaurant and bar. Plaintiff was employed by Defendant as a bartender. Defendant acquired the restaurant and bar in January 2024. Prior to Defendant's acquisition of the restaurant and bar, Plaintiff had been employed at the restaurant and bar for approximately six years. During that time, Plaintiff usually worked as the lone bartender during her shifts. After the acquisition, Defendant retained Plaintiff as a bartender. In March 2024, Defendant hired Douglas

Camargo as the Manager of the restaurant and bar. At first, after Camargo started, Plaintiff continued to work as the sole bartender during her shifts.

On April 12, 2024, Plaintiff informed Camargo of her pregnancy, her due date, and that she would need pregnancy-related accommodations moving forward. Camargo, without looking away from the computer, responded "ok." Plaintiff asked if she could have additional breaks and limitations on physical exertion as her pregnancy-related medical conditions became more serious. Plaintiff was able to continue working as a bartender. However, her pregnancy caused her to become nauseous, which impacted her ability to concentrate and focus. She also needed to use the restroom frequently, requiring frequent breaks. After explaining all this to Camargo, Plaintiff again asked about accommodations, but Camargo failed to respond. Plaintiff again asked Camargo about the accommodations later the same day and he did not respond.

The next day, the new shift schedule had Plaintiff scheduled to work with another bartender, Floria Gerardino ("Floria"), who was not pregnant. Floria had never worked as a bartender before. By scheduling another bartender to work with Plaintiff, Camargo effectively cut Plaintiff's pay in half because Plaintiff had to split her tips. On April 15, 2024, Plaintiff texted Camargo about the new schedule but he did not respond. At the end of her next shift, Plaintiff asked Camargo about her text and whether she was supposed to train Floria. Camargo shouted at Plaintiff that the schedule was final and to stop asking about it. After that, Camargo stopped greeting Plaintiff or acknowledging her presence, despite greeting the other employees.

On April 21, 2024, Floria's training was complete. During her shift with Plaintiff, Camargo pulled Floria aside and told Floria he would give her any shift that she wanted, including Plaintiff's regularly scheduled shifts that Plaintiff had been working the past few years. Later that day, Camargo released the schedule for the next week. Camargo further cut Plaintiff's hours,

reassigned her normal shifts to Floria and others, and regularly scheduled Plaintiff to work with another bartender. However, male and non-pregnant female bartenders were scheduled to work alone. Towards the end of Plaintiff's shift, Camargo walked behind the bar and mockingly asked Plaintiff, "what's wrong?" Plaintiff responded that she did not want to talk about the schedule while working. Camargo responded with a smirk and then shouted, "What do you want?" in front of several customers. Plaintiff answered that she was unhappy with the current schedule because she had previously been scheduled for busier shifts and she would not be able to support herself financially with the new shifts. Camargo, giggling, responded, "I'm the manager! I make the schedule! You're pregnant! What schedule do you expect to get!?"

       Plaintiff then asked if she was given a less favorable schedule because of her pregnancy. Camargo responded that she was given a less favorable schedule because of her pregnancy. Plaintiff explained that his decision was unfair and she wanted the schedule she had worked for years. Plaintiff continued to complain that Camargo's actions, changing her schedule and cutting her wages in half because she was pregnant, were discriminatory and illegal. Camargo then shouted at Plaintiff, in front of customers and co-workers, "FUCK YOU, get the fuck out of the restaurant, get out of here, you FUCKING BITCH!" Camargo continued, "you are TRASHY and GHETTO," and he ordered her to leave the restaurant. Plaintiff did not move. Camargo walked up to Plaintiff, put his hand up to Plaintiff's face and balled his hand into a fist. Camargo pulled his fist back in the air as if he were going to punch Plaintiff. Plaintiff then asked Camargo if he was really going to punch a pregnant woman in front of dozens of people. Camargo then terminated Plaintiff in front of her colleagues and customers, effective immediately.

       Plaintiff was on the verge of tears so she went to the bathroom for privacy. When she exited the bathroom, Camargo was waiting for her. He yelled, "hurry up and finish and get out of

here!"  Plaintiff told him that she would close out her remaining customers and collect her tips. Camargo approached Plaintiff, raised his hands, pointed his finger in her face and said, "you better watch your mouth, I'm the boss around here!"

On July 23, 2024, Plaintiff dual filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission and the Florida Commission on Human Relations.  On February 25, 2025, Plaintiff received her Notice of Right to Sue and commenced this action within ninety (90) days of receipt of the Notice of Right to Sue.  Plaintiff's Amended Complaint alleges eight causes of action: (1) disparate treatment in violation of Title VII; (2) hostile work environment in violation of Title VII; (3) retaliation in violation of Title VII; (4) PWFA discrimination; (5) retaliation in violation of the PWFA; (6) disparate treatment in violation of the FCRA; (7) hostile work environment in violation of the FCRA; and (8) retaliation in violation of the FCRA.

## II.     MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the facial sufficiency of a complaint.  The rule permits dismissal of a complaint that fails to state a claim upon which relief can be granted.  It should be read alongside Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When a complaint is challenged under Rule 12(b)(6), a court will presume that all well-pleaded allegations are true and view the pleadings in the light most favorable to the plaintiff.  *Am.*

*United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).  However, once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  A complaint can only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555.  However, a well-pled complaint survives a motion to dismiss "even if it strikes a savvy judge that actual proof of these facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 556.

## III.  DISCUSSION

As noted, Plaintiff's claims are brought under Title VII, the FCRA and PWFA.  Because the FCRA is patterned on Title VII, under Florida law, decisions construing Title VII are applicable to and guide the analysis of claims under the FCRA.  *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).  Thus, the Court will consider Plaintiff's Title VII and FCRA claims together.

### A.  Counts I and VI—Disparate Treatment

Defendant seeks to dismiss Plaintiff's disparate treatment claims under Title VII and the FCRA.  Defendant maintains that Plaintiff has failed to allege direct evidence of discrimination and has failed to allege circumstantial evidence of discrimination.  At this stage of the proceedings, Plaintiff does not have to establish her prima facie case because that is an evidentiary standard not a pleading standard.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas*, however, is an evidentiary standard, not a pleading requirement.").  Thus, while "[a] complaint in an employment discrimination case need not contain

5

specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss, . . . complaints alleging discrimination still must meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011) (citations omitted).

Here, Plaintiff has alleged facts sufficient to establish disparate treatment. She has alleged that when she asked Camargo about the schedule changes, giving Plaintiff less desirable shifts and scheduling her with another bartender, Carmargo responded, "I'm the manager! I make the schedule! You're pregnant! What schedule do you expect to get!?" Floria, a non-pregnant female bartender, on the other hand, was told that she could have any shifts she wanted. Additionally, non-pregnant females and males were assigned to solo shifts, while Plaintiff always was assigned to work with another bartender. As a result, Plaintiff's wages were substantially cut. These facts are sufficient to meet the plausibility standard and state a claim for disparate treatment. Accordingly, the Motion to Dismiss Plaintiff's disparate treatment claims under Title VII and the FCRA, Counts I and VI, respectively, is denied.

### B.     Counts II and VII—Hostile Work Environment

Defendant seeks to dismiss Plaintiff's hostile work environment claims brought under Title VII and the FCRA. To establish a *prima facie* case of a hostile work environment claim, a plaintiff must establish:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . .; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). In determining whether

an environment is sufficiently severe as to be actionable, a court must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, (1993). Defendant argues that Plaintiff has failed to plead that she was subject to harassment sufficiently severe and pervasive as to alter the terms and conditions of her employment.

Plaintiff responds that she has sufficiently pled her hostile work environment claim and the severe and pervasive element. Plaintiff points to her allegations that Camargo made multiple comments mocking Plaintiff, including "I'm the manager! I make the schedule! You're pregnant! What schedule do you expect to get!?"; "FUCK YOU, get the fuck out of the restaurant, get out of here, you FUCKING BITCH!"; and "you are TRASHY and GHETTO." Plaintiff also points to Camargo's behavior of pointing a finger in her face, balling his hand into a fist and raising it as if he were going to punch Plaintiff, and terminating Plaintiff. However, according to the Amended Complaint, all of these incidents took place on a single day—the day Camargo terminated Plaintiff. Thus, the Amended Complaint does not allege incidents spanning a period of time, essentially undermining a claim of pervasiveness. Further, Plaintiff has not alleged that these incidents affected her ability to do her job. Consequently, Plaintiff has failed to allege facts that would establish the existence of a hostile work environment. Accordingly, Counts I and VII are dismissed.

    **C.**    **Counts III and VIII—Retaliation**

Defendant seeks to dismiss Plaintiff's retaliation claims because she has failed to plead one of the elements of her claim. "To establish a claim of retaliation under Title VII . . . , a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action,

7

and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).  Defendant asserts that Plaintiff has failed to allege that she engaged in statutorily protected activity.  Defendant's motion also makes a passing statement that Plaintiff has not alleged a causal link.

Plaintiff engaged in statutorily protected activity when she told Camargo that changing her schedule and cutting her wages in half because she was pregnant were discriminatory and illegal. *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (noting that statutorily protected activity occurs when an employee protests an employer's conduct which the employee had a good faith belief was unlawful).  Consequently, Plaintiff has alleged a statutorily protected activity.  Camargo terminated Plaintiff moments later.  This is sufficient to allege a causal connection.  *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action.").  Consequently, the Motion to Dismiss is denied as to Plaintiff's retaliation claims under Title VII and the FCRA, Counts III and VIII.

### D.   Counts IV and V—PWFA

Defendant contends that both of Plaintiff's claims under the PWFA should be dismissed because Plaintiff has not alleged that she had any pregnancy-related limitations or that she communicated those limitations to Defendant.  Under the PWFA it is unlawful, inter alia, to "not make reasonable accommodations to the known limitations related to the pregnancy," 42 U.S.C. § 2000gg-1(1); to "deny employment opportunities to a qualified employee if such denial is based on the need of the covered entity to make reasonable accommodations to the known limitations related to the pregnancy," 42 U.S.C. § 2000gg-1(3); or to "take adverse action in terms, conditions, or privileges of employment against a qualified employee on account of the employee requesting

8

or using a reasonable accommodation to the known limitations related to the pregnancy," 42 U.S.C. § 2000gg-1(5).  A "known limitation" is a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions that the employee or employee's representative has communicated to the employer . . .." 42 U.S.C. § 2000gg-1(4).

Count IV of Plaintiff's Amended Complaint is titled "PWFA Discrimination." It is not entirely clear from the Amended Complaint exactly what violations of the PWFA Plaintiff is asserting.  Count IV references §§ 2000gg-1(3) and (5).  Within Count IV Plaintiff alleges that Defendant failed to provide reasonable accommodations and subjected her to discriminatory treatment because of her sex and pregnancy.  Plaintiff then alleges that these actions constitute an adverse employment action under the PWFA.  Plaintiff also alleges that Defendant failed to engage in the interactive process to explore reasonable accommodations.  Thus, it is not clear whether Plaintiff's "PWFA Discrimination" claim is based on subsection 1, 3, or 5 of § 2000gg-1.

Defendant maintains that her claim should be dismissed because Plaintiff fails to allege any physical or mental condition arising from her pregnancy that she communicated to Defendant.  Plaintiff, however, alleges that she told Camargo that her pregnancy caused her to become nauseous, impacting her ability to concentrate and focus, and that her pregnancy also caused her to need to use the restroom more often, requiring additional breaks.  Plaintiff also asked for limitations on her physical exertion as her pregnancy-related medical conditions became more serious.  Thus, Plaintiff has alleged that she had a physical or mental condition arising from her pregnancy, which she communicated to her employer.

Defendant also argues that Plaintiff fails to allege that Defendant failed to accommodate her reasonable requests.  While Plaintiff alleges that "Defendant failed to reasonably accommodate [her] pregnancy and pregnancy-related requests," there are no specific facts alleged that Plaintiff

9

was not permitted to take frequent bathroom breaks or that she was required to overexert herself. Moreover, the Amended Complaint alleges that when Plaintiff informed Camargo that she was pregnant and would need pregnancy-related accommodations, he replied "ok." Thus, Plaintiff has not sufficiently alleged a failure to accommodate claim under the PWFA. Therefore, to the extent Count IV is based on a failure to accommodate under the PWFA, it is dismissed.

To the extent that Plaintiff's PWFA Discrimination claim is based on a denial of opportunities based on a need to accommodate Plaintiff or an adverse action based on Plaintiff's requested accommodations, Defendant's only argument is that Plaintiff has not pled a known limitation. However, as set out above, Plaintiff has adequately pled that she has a known limitation. Consequently, Count IV is dismissed only to the extent it is based on a failure to accommodate under the PWFA.

Count V of the Amended Complaint alleges a claim for PWFA retaliation/interference in violation of 42 U.S.C. § 2000gg-2(f)(1) and (2). Subsection (f)(1) prohibits discrimination "against any employee because such employee has opposed any act or practice made unlawful by this chapter." § 2000gg-2(f)(1). Subsection (f)(2) makes it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of such individual having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C.A. § 2000gg-2(f)(2). Plaintiff alleges that Defendant retaliated and discriminated against Plaintiff after she informed Defendant she was pregnant and asked for accommodations. Defendant's Motion does not directly address this claim; instead, it groups this claim in with its discussion of the "PWFA Discrimination" claim. Thus, Defendant has failed to establish that this claim should be dismissed. Consequently, the Motion to Dismiss is denied as to Count V.

Accordingly, it is

**ORDERED** that:

1. Defendant's Motion to Dismiss Amended Complaint [DE 24] is **GRANTED in part and DENIED in part.**

    a. The Motion is granted as to Counts II and VII and as to Count IV to the extent Count IV is based on a failure to accommodate.

    b. The Motion is denied as to Counts I, III, V, VI, VIII, and Count IV to the extent it is not based on a failure to accommodate.

2. Defendant shall file its answer by **August 4, 2025.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 25th day of July, 2025.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record